United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANA MARK DEWEESE,

      Petitioner,

  v.

TOM CAREY, Warden,

      Respondent.

No. C 06-5632 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254. As grounds for habeas relief petitioner alleges, *inter alia*, that he received ineffective assistance of counsel and that his sentence is unconstitutional. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

Petitioner was convicted by a Lake County Superior Court jury of assault with a deadly weapon (Cal. Pen. Code § 245(a)(1)).  Also, the jury found true an allegation that he inflicted great bodily injury (*id*. § 12022.7), petitioner admitted to a prior strike allegation (*id*. §§ 667(b)–(i), 1170.12(a)–(d)), and the trial court found that petitioner had suffered a prior serious felony conviction (*id*. 667(a)).  The trial court sentenced petitioner to sixteen years in state prison. Petitioner appealed.  The California Court of Appeal for the First Appellate District affirmed the

judgment.[1] Evidence presented at trial showed that during the afternoon of May 24, 2001, petitioner attacked persons who had given petitioner and his companion, both strangers to the vehicle's driver and passengers, a ride (Ans., Exh. H (*People v. Deweese*, No. A098366, 2004 WL 1615590 (Cal. Ct. App. Jul. 19, 2004)) at 1, 2–4). Petitioner contended at trial that he acted in self-defense (Ans., Exh. B, Vol. 1 (Reporter's Transcript 12/05/01) at 21-22).

As grounds for federal habeas relief, petitioner alleges that (1) his Fifth Amendment rights were violated; (2) the sentencing court's imposition of the aggravated term was based on facts not found by a jury; (3) his first attorney was ineffective in revealing to the prosecutor a taped statement made for the prosecutor by petitioner, and that his second trial counsel was ineffective in not calling an eye-witness;[2] (4) the trial court violated his due process rights by admitting impeachment evidence; (5) appellate counsel was ineffective in not presenting various issues; (6) the prosecutor committed misconduct in specified ways; (7) the trial court violated his Confrontation Clause rights when it excluded certain evidence; (8) his due process rights were violated by the sentencing court's reliance on the same facts for imposition of the upper term as it relied upon for imposing sentence enhancements; and (9) his due process rights were violated by the trial court's denial of his motion to strike a prior conviction.

**STANDARD OF REVIEW**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d).

The first prong applies both to questions of law and to mixed questions of law and fact.

---

[1] Judges Sepulveda, Kay, and Rivera sat on the state appellate panel.

[2] Though this claim was presented as two separate claims in the order to show cause, this order will consider these two under the same heading.

2

*Williams v. Taylor*, 529 U.S. 362, 407–09 (2001). The second prong applies to decisions based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. A state court decision is an "unreasonable application of" Supreme Court authority, and thus falls under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court on habeas review may not issue a writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeal, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981). A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Ibid.*

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991).

## DISCUSSION

**1.  FIFTH AMENDMENT**

Petitioner claims that the statements he made to the arresting officer, John Larsen, were taken in violation of his Fifth Amendment rights as defined in *Miranda v. Arizona*, 384 U.S. 436 (1966), and while he was intoxicated (Pet. at 3). The state appellate court apparently did not rule on this claim.

The facts on which petitioner's bases his claim are summarized by the state appellate court as follows:

> [Petitioner] was arrested and transported to the police department. Sergeant Larsen testified that on the way, [petitioner] stated, "Doesn't a person have a right to defend himself?" and "Is this . . . about the little fight from earlier?" When Sergeant Larsen told him he was being arrested for a stabbing, [petitioner] stated, "Is that just because [of] that little old knife' or 'little knife' or something to do with a little knife." [Petitioner] also indicated he had been punched in the nose and had defended himself. Later, when [petitioner] was being transported to jail, he asked what he was being arrested for and Larsen told him attempted murder. [Petitioner] told Larsen that it was unfair that he "was being arrested for just defending himself" and that he was "from Missouri and he didn't have to take being punched in the face for no reason." [Petitioner] asked how many times [a victim] had been stabbed and Larsen indicated several times in the chest and back. [Petitioner] said that "if [I] stabbed a guy [I] would not have stabbed him in the back, [I] would have stabbed him in the front."

(Ans., Exh. H at 5–6).[3] Respondents concede that during the time he was in the car with Larsen, petitioner was in custody as defined by *Miranda* (Ans., P. & A. at 14).

Petitioner's claim is based upon *Miranda*, which requires that a person subjected to custodial interrogation be advised prior to questioning that he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. 384 U.S. at 444. Statements taken in violation of *Miranda* are inadmissible. *Ibid*. However, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Id*. at 478. Furthermore, even if statements taken in violation of *Miranda* are admitted at trial, habeas relief should be granted only if the admission "had a substantial and injurious effect or influence in determining the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 147 (1998).

---

[3]  Testimony related to this issue appears at Ans., Exh. B, Vol. 2 at 201–203.

1    Petitioner's claim is without merit.  The record shows that although he was in custody at
2 the time, petitioner, even if intoxicated, asked those questions and made those statements
3 voluntarily and without prompting by a police officer.  As *Miranda* holds, voluntarily offered
4 statements are admissible.  Furthermore, petitioner has not shown how these statements — which
5 were simple questions about the arrest and the incident, and would  probably support petitioner's
6 assertion of self-defense — had a substantial or injurious effect or influence in determining the
7 jury's verdict.  Based on these reasons, petitioner's claim is denied.

**2.    IMPOSITION OF AN AGGRAVATED TERM**

9    Petitioner claims that the trial court violated his constitutional rights as set forth in *Blakely*
10 *v. Washington*, 542 U.S. 296 (2004) and *Cunningham v. California*, 549 U.S. 270 (2007) when it
11 imposed an upper term (Pet. at 8).  The trial court, finding no circumstances in mitigation and
12 several circumstances in aggravation, imposed the upper term of four years for the assault
13 conviction, and then doubled it because of petitioner's admitted prior strike.  The trial court then
14 added three years for the great bodily injury enhancement and five more years for petitioner's
15 prior prison term (Ans., Exh. F (Reporter's Transcript 2/14/2002) at 43–44).  The trial court's
16 stated reasons for the imposition of the upper term were that petitioner "ha[d] engaged in violent
17 conduct which indicates that he is a serious danger to society," had "a prior felony conviction [for]
18 voluntary manslaughter," and petitioner had "served a prior prison term" (*id*. at 42–43).  The state
19 appellate court apparently did not rule on this specific claim.[4]

20    *Blakely* and *Cunningham*, on which petitioner bases his claim, are the progeny of an earlier
21 Supreme Court case, *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Supreme
22 Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a
23 crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a
24 reasonable doubt."  *Id*. at 488–90.  According to *Blakely*, the "statutory maximum" discussed in
25 *Apprendi* is the maximum sentence a judge could impose based solely on the facts reflected in the
26 jury verdict or admitted by the defendant; in other words, the relevant "statutory maximum" is not

---

[4]  Petitioner presented a different claim on these same facts to the state appellate court, a claim that is addressed below.

5

the sentence the judge could impose after finding additional facts, but rather the maximum he could impose without any additional findings. 542 U.S. at 303–04.

In *Cunningham*, the Supreme Court applied the above reasoning to California's determinate sentencing law ("DSL") and found such sentencing scheme violated the Sixth Amendment because the DSL allowed the sentencing court to impose an elevated sentence based on aggravating facts that the trial court found by a preponderance of the evidence, rather than facts found by a jury beyond a reasonable doubt. 549 U.S. at 274.

Petitioner's claim is without merit because the trial court based its decision on the fact that petitioner had a prior felony conviction, a fact to which petitioner admitted (Ans., Exh. H at 1; Exh. F at 29.[5] *Apprendi* and its progeny specifically except the fact of a prior conviction from its holdings. Therefore, the *Apprendi* line of cases — including *Blakely* and *Cunningham* — are inapplicable to the trial court's imposition of an upper term for petitioner's sentence. Accordingly, petitioner's claim is denied.

**3.    INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner advances two claims of ineffective assistance of counsel.

**A.    FIRST CLAIM**

Petitioner alleges that his first trial counsel, Karen Evans, rendered ineffective assistance when she gave the prosecutor a copy of a statement petitioner had made to a private investigator (Pet. at 24). The state appellate court apparently did not rule on this claim.

The relevant facts as found true by the trial court are as follows. Petitioner asked Evans to hire an investigator to take a statement from petitioner and then to give the prosecutor a copy of the statement, which related to petitioner's assertion that he acted in self-defense. Evans hired an investigator to take the statement, which in turn was given to the prosecution.

Later, petitioner, through his second counsel, Stephen Carter, sought to exclude the statement from trial on the basis that petitioner did not give Evans permission to hand over the statement. The trial court, after holding a hearing on the matter, found Evans credible and,

---

[5] Under California law, a single aggravating factor is sufficient to render a defendant eligible for the upper term. *People v. Osband*, 13 Cal. 4th 622, 728 (Cal. 1996) (citation removed).

6

therefore, found that petitioner had waived attorney-client privilege when he directed Evans to give the prosecutor a copy of the statement (Ans., Exh. E (Reporter's Transcript 12/25/01) at 187). Respondent asserts, and petitioner does not dispute, that no part of the statement was used at trial (Ans., P. &. A. at 27).

Claims of ineffective assistance of counsel are examined under *Strickland v.Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id*. at 687–68. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Ibid*. Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

Applying these principles to the instant action, this order concludes that petitioner's claim is without merit. As an initial matter, petitioner has not shown that Evans's performance was deficient. According to the record, Evans acted at petitioner's direction, both in hiring the investigator and handing over the statement to the prosecutor. Though he now disputes that he gave Evans permission to so act, this order must accord the trial court's credibility determination regarding Evans the highest deference. *See Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986). Furthermore, petitioner has not alleged that the contents of the note, though not presented at trial, contained information that the prosecutor used against petitioner or that Evans should have known not to disclose the note, despite petitioner's urging. Rather, he alleges that Evans handing over the statement constituted by itself ineffective assistance. This is insufficient. Also, petitioner has not demonstrated prejudice. The statement was not used at trial and therefore petitioner has not shown that a reasonable probability exists that but for its admission the factfinder would have had a reasonable doubt respecting guilt. Accordingly, petitioner's claim is denied.

7

### B. SECOND CLAIM

Petitioner also claims that Stephen Carter, his second trial counsel, rendered ineffective assistance when he failed to call Cynthia Curry, petitioner's companion on the day of the commitment offense, to testify at trial. The state appellate court apparently did not rule on this claim.

Before trial, the prosecutor moved to admit impeachment evidence against Curry. This evidence included a prior felony conviction for a crime unrelated to the instant matter — Curry had been convicted of being an accessory to a murder (Cal. Pen. Code §§ 30–33) for assisting her brother-in-law dispose of a corpse (Ans., Exh. B, Vol. 6 (Reporter's Transcript 12/19/01) at 795, 798). The trial court granted the prosecutor's motion and specifically held that the prosecutor could ask Curry about the fact of the conviction and the circumstances surrounding it (*id*. at 796). Because Curry's testimony could be easily impeached, Carter declined to call Curry to testify at trial (*id*. at 798).

Tactical decisions of trial counsel, such as not calling Curry to testify, deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). It is important to note that a difference of opinion as to trial tactics does not constitute denial of effective assistance. *See United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981).

Under this standard, petitioner's claim is without merit. The record supports a conclusion that trial counsel made an informed decision not to call Curry based on the strategic consideration that her impeachability might damage the defense. Whatever merit Curry's testimony may have had, her credibility would be impeached profoundly when the jury was informed of her prior conviction, which not only was a felony, but directly involved deception relating to a murder. Petitioner has pointed to no evidence that defense counsel could have used to rehabilitate the witness, or that the importance of Curry's testimony outweighed any adverse effects her testimony might cause. Considering all this, trial counsel's decision appears reasonable. Accordingly, petitioner's claim is denied.

### 4. TRIAL COURT'S EVIDENTIARY RULING

Petitioner contends that the trial court violated various constitutional rights when it granted the prosecution's motion to admit the Curry impeachment evidence (Pet. at 46). Petitioner alleges that by admitting this evidence, the trial court caused trial counsel to forgo calling Curry to testify, thereby depriving petitioner of his right to a defense (*ibid.*). The state appellate court apparently did not rule on this claim.

Petitioner's claim is without merit. First, the trial court did not prevent trial counsel from calling Curry to testify. Curry could have testified, though she would have been subject to questions about her prior conviction. The decision not to call Curry was defense counsel's, not the trial court's, and it was a tactical decision that appeared reasonable under the circumstances. Second, petitioner has not shown that the trial court's admission of the evidence violated any constitutional right. The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). As to the question whether a specific constitutional guarantee was violated, petitioner has not shown that he was denied his Sixth Amendment right to present a defense, or that he was not afforded criminal proceedings that comport with prevailing notions of fairness, as guaranteed by due process. Again, petitioner could have presented Curry's testimony, though such a decision may have been costly. As to the question of the magnitude of the error, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process such that petitioner was denied a fundamentally fair trial. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). Using prior convictions to impeach a witness is constitutionally permissible, and is routine under Federal Rule of Evidence 609. Petitioner was not "entitled" to present an alibi witness and to have her immunized from effective cross-examination. Based on this reasoning, petitioner's claim is denied.

### 5. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner contends that appellate counsel rendered ineffective assistance when he failed to raise petitioner's *Miranda* and ineffective assistance claims on appeal (Pet. at 47).

9

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). A habeas petitioner therefore must show that appellate counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *Miller*, 882 F.2d at 1434 & n.9 (citing *Strickland*, 466 U.S. at 688, 694). It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See Miller* at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason — because he declined to raise a weak issue. *Ibid*.

Petitioner's claim is without merit. As stated above, the Court has determined that petitioner has failed to show that his *Miranda* and his ineffective assistance of trial counsel claims have merit. Petitioner adds nothing in the instant claim that shows that these claims would have had merit on appeal. Because these claims are without merit, it cannot have been a constitutional error for appellate counsel to not raise them on appeal.

Petitioner also contends that his appellate counsel failed to raise a Fourth Amendment claim on appeal, specifically that an officer illegally seized a knife — allegedly the weapon petitioner used to attack the victims — from petitioner's brother's residence (Pet. at 47–48). Petitioner's claim is without merit. Specifically, however, he has not shown that he had a reasonable expectation of privacy at his brother's house, which is the threshold issue in determining whether there was a Fourth Amendment violation. *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004) (citation removed). Furthermore, the record indicates that the officer did not seize the knife, but rather had the knife given to him by petitioner's sister-in-law (Pet. at 48).[6] Because there was no evidence of a seizure within the meaning of the Fourth Amendment,

---

[6] Petitioner contends that because his relations were intoxicated, they could not have given valid consent (Pet. at 49–50). Even if this were true and relevant to the Fourth Amendment issue, petitioner still has not shown that he had a reasonable expectation of privacy at his brother's house.

10

1  petitioner's claim was and is without merit. Because the claim is without merit, appellate
2  counsel's failure to raise it on appeal cannot have been an instance of ineffective assistance.
3  Because petitioner's Fourth Amendment claim is without merit, his additional claims that it was
4  error for the prosecutor to have the knife tested for blood and that it was error for the trial court to
5  admit the knife are without merit. Likewise, his claim that appellate counsel was ineffective for
6  raising these claims on appeal is without merit. Accordingly, all petitioner's claims alleging
7  ineffective assistance of appellate counsel are denied.

**6.    PROSECUTORIAL MISCONDUCT**

Petitioner raises four claims of prosecutorial misconduct.

**A.    ALLEGED *GRIFFIN* ERROR**

Petitioner contends that the prosecutor commented on petitioner's failure to testify at trial in violation of his Fifth Amendment right as articulated in *Griffin v. California*, 380 U.S. 609 (1965). Specifically, the prosecutor, during her closing argument, as part of her discussion of petitioner's assertion that he acted in self-defense, queried, "Have you heard any evidence of [petitioner's] belief that he needed to use self-defense?" Trial counsel immediately made a *Griffin* objection, which the trial court overruled. Trial counsel then moved to dismiss the action, which the trial court denied (Ans., Exh. B, Vol. 7 (Reporter's Transcript 12/20/01) at 965–67). The state appellate court denied petitioner's *Griffin* claim, finding that "the prosecutor's comment [] to be a permissible reference to the state of the evidence rather than a comment on [petitioner's] failure to testify" (Ans., Exh. H at 9).

The Fifth Amendment prohibits the prosecutor from commenting to the jury on the defendant's failure to take the stand in his own defense. *Griffin*, 380 U.S. at 615. Where a prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the defendant's privilege against compulsory self-incrimination is violated. *Ibid*. However, "[a] comment on the failure of the defense as opposed to the defendant to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege." *United States v. Lopez-Alvarez*, 970 F.2d 583, 595–596 (9th Cir. 1992) (internal quotation marks

11

1  and citations removed). Yet, while it is proper for the prosecution to address the defense
2  arguments, a comment is impermissible if it is manifestly intended to call attention to the
3  defendant's failure to testify, or is of such a character that the jury would naturally and necessarily
4  take it to be a comment on the failure to testify. *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir.
5  1987) (citing *United States v. Bagley*, 772 F.2d 482, 494 (9th Cir. 1985)).

6  However, if the commentary is impermissible, such commentary by the prosecutor requires
7  reversal only if "(1) the commentary is extensive; (2) an inference of guilt from silence is stressed
8  to the jury as a basis for the conviction; and (3) where there is evidence that could have supported
9  acquittal." *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993) (citation omitted). Put
10 differently, such improper commentary warrants reversal only if it appears that it may have
11 affected the verdict. *See Lincoln*, 807 F.2d at 809; *see also Cook v. Schriro*, 516 F.3d 802, 822
12 (9th Cir. 2008).

13 Petitioner's claim is without merit. The record supports the conclusion that the
14 prosecutor's comments related to the state of the evidence and to petitioner's assertion that he
15 acted in self-defense, and not to petitioner's failure to testify. As such, these statements are not
16 error under *Griffin*, but rather a response to a defense argument and to the defense's failure to
17 present evidence supporting its assertion. Furthermore, even if the prosecutor's comment was
18 impermissibly intended to call attention to petitioner's failure to testify, it is not of a nature
19 sufficient to warrant the granting of habeas relief. First, this commentary was not extensive, but
20 rather a single sentence. Second, the comments did not encourage the jury to infer guilt from
21 petitioner's silence, but rather asked the jury whether the defense had presented evidence on its
22 assertion that petitioner committed the acts in self-defense. Third, petitioner has pointed to no
23 evidence that would have supported acquittal. Based on this record, the Court cannot say that the
24 prosecutor's comments warrant the granting of habeas relief. This claim is denied.

25 **B.    BURDEN OF PROOF**

26 Petitioner contends that the prosecutor violated his rights by misstating the burden of proof
27 for a conviction. Petitioner bases his claim on the prosecutor's allegedly erroneous statement to
28 the jury that, "there is no self-defense in this case. I don't have to prove to you that self-defense

12

1  does not exist. I only have to prove to you the elements of the crime" (Ans., Exh. B, Vol. 7
2  (Reporter's Transcript 12/20/10) at 968. The trial court correctly instructed the jury on the burden
3  of proof: "The People have the burden to prove that the application of physical force was not in
4  lawful self-defense. If you have a reasonable doubt that the application of physical force was
5  unlawful, you must find [petitioner] not guilty" (*id*. at 1063). The state appellate court denied
6  petitioner's claim, finding that the trial court's instruction cured whatever harm the prosecutor's
7  statement may have caused (Ans., Exh. H at 10–11).

8       Claims of prosecutorial misconduct are reviewed under the narrow standard of due process
9  and not the broad exercise of supervisory power. *See Darden v. Wainwright*, 477 U.S. 168, 181
10 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a
11 trial "fundamentally unfair." *See ibid*. Under *Darden*, the first issue is whether the prosecutor's
12 remarks were improper; if so, the next question is whether such conduct infected the trial with
13 unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).

14      Petitioner's claim is without merit. The prosecutor's first statement was not a misstatement
15 of the law, but rather a comment on the state of the evidence. The prosecutor's last comment was
16 largely correct in that it was his duty to prove the elements of the crime, though it was not true that
17 that was her only burden. The second sentence could be seen as a misstatement of the law because
18 the prosecution under California law has the burden to prove that the use of physical force was not
19 in self-defense, and therefore, was unlawful. However, the trial court correctly instructed the jury
20 as to the prosecution's burden of proof. Without evidence to the contrary, the Court must assume
21 that the jury followed its instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987).
22 Accordingly, petitioner has not shown that the prosecutor's statement infected the trial with
23 unfairness. This claim is denied.

24      Petitioner also contends that the prosecutor committed misconduct by misstating the law of
25 self-defense. Specifically, petitioner claims that the prosecutor omitted that self-defense has both
26 objective and subjective components (Pet. at 73). This claim is without merit. The trial court
27 properly instructed the jury on the legal meaning of self-defense (Ans., Exh. B, Vol. 7 at 1056).
28 The Court must assume that the jury followed its instructions. This claim is denied.

13

### C. ALLEGED MISSTATEMENTS

Petitioner claims that the prosecutor made "numerous misstatements of facts, or attempted to smuggle facts before the jury that were not in the record" (Pet. at 67). Petitioner alleges that the prosecutor stated that petitioner's knife tested presumptively positive for human blood, that the prosecutor tried to introduce the fact that a witness was stabbed in the back before evidence that such an act occurred was presented, that he elicited two hearsay objections, that the prosecutor asked a question that called for the witness to speculate, and she asked three improper questions of a witness. The state appellate court denied this claim, finding that not only had petitioner had not explained why these examples amounted to misconduct, but that none of the examples, taken individually or together, was sufficient to infect the trial with unfairness (Ans., Exh. H at 12).

Petitioner's claims are without merit because he has failed to show that any of these incidents resulted in a trial that was fundamentally unfair. First, the prosecutor's statement regarding the blood appears to be inaccurate. The criminologist testified that the blood on the knife tested "presumptively positive" for "just" blood — he testified that he could not determine whether the blood was human (Ans., Exh. B, Vol 5 (Reporter's Transcript 12/18/01) at 730). However, because petitioner's asserted that his actions were taken in self-defense — thereby rendering the type of blood found on the knife irrelevant — the record does not support a claim that these statements resulted in a fundamentally unfair trial. Second, even if prosecutor had tried to "smuggle in" the fact a victim had been stabbed in the back, admissible evidence of the stabbing was properly introduced at trial at other times. Third, the trial court upheld petitioner's objections to the hearsay statements and instructed the jury to disregard the answers. Without evidence to the contrary, the Court must assume that the jury followed its instructions. *See Richardson*, 481 U.S. at 206. Fourth, as to the prosecutor's question that allegedly called for speculation, the witness responded, "I don't know anything about his motives, no. How would I know?" (Ans., Exh. B, Vol. 6 (Reporter's Transcript 12/19/01) at 825). Petitioner has not shown how such a statement, even if caused by an improper question, deprived him of a fundamentally fair trial. Fifth, the trial court sustained trial counsel's objections to the three allegedly improper questions, and, consequently, the witnesses provided no answers (Pet. at 76–77). The trial court instructed the

14

1  jury that the statements and questions from the prosecutor and defense counsel are not evidence
2  (Ans., Exh. B, Vol. 7 at 1046). Again, the Court must assume that the jury followed its
3  instructions. *See Richardson*, 481 U.S. at 206. Petitioner's claim is denied.

### D. MISREPRESENTATION

Petitioner contends that the prosecutor committed misconduct when she represented to the trial court that she did not have notice that petitioner's mother would be called to testify that petitioner had black eyes and a swollen nose when petitioner was bailed out of jail (Pet. at 79). As the parties came to agree, a copy of an interview with petitioner's mother had been disclosed to the prosecutor before trial. After the prosecutor's representation, petitioner moved to dismiss on the basis that the prosecutor committed misconduct (Ans., Exh. B, Vol. 7 at 917). In a hearing on the matter, the prosecutor testified that she had not intentionally misled the trial court, but rather that she had overlooked the interview in the hundred pages of discovery materials given to her (*id*. at 918–19). The trial court found the prosecutor credible (*id*. at 926). The state appellate court found that the alleged misconduct did not render petitioner's trial unfair, "nor was it a deceptive or reprehensible method of persuasion" (Ans., Exh. H at 12).

Petitioner's claim is without merit. This Court will accord great deference to the trial court's credibility finding in the prosecutor's favor. *See Knaubert*, 791 F.2d at 727. Also, petitioner has not shown how the prosecutor's representation adversely affected his defense. Accordingly, petitioner has not shown that the prosecutor committed misconduct or that any alleged misconduct resulted in an unfair trial. This claim is denied.

### E. CUMULATIVE ERROR

Petitioner contends that prosecutor's errors, taken in the cumulative, deprived him of a fair trial (Pet at 80).

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir. 2003). However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

1  Petitioner's claim is without merit.  Because there exists no single constitutional error,
2 there are no errors to accumulate to the level of a constitutional violation.

3 **7. CROSS-EXAMINATION**

4 Petitioner claims that the trial court violated his Confrontation Clause rights by limiting his
5 cross-examination of two witnesses.  More specifically, the trial court sustained the prosecutor's
6 objection to trial counsel's questions regarding Martin, a victim (Pet. at 84).  Petitioner sought to
7 introduce evidence of Martin's poverty in order to show that Martin had a motive to rob petitioner,
8 thereby justifying petitioner's acting in self-defense.  The state appellate court denied this claim,
9 finding that such testimony was irrelevant and duplicative (Ans., Exh. H at 16).

10 The Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses
11 appearing before the trier of fact.  *See Coy v. Iowa*, 487 U.S. 1012, 1016 (1988).  The ultimate goal
12 of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a
13 substantive guarantee.  *Crawford v. Washington*, 541 U.S. 36, 61 (2004).  It commands, not that
14 evidence be reliable, but that reliability be assessed in a particular manner:  by testing in the
15 crucible of cross-examination.  *Ibid*.  This right may be restricted in certain situations, however.
16 *See Maryland v. Craig*, 497 U.S. 836, 855 (1990).  The Confrontation Clause does not prevent a
17 trial judge from imposing reasonable limits on cross-examination based on concerns of
18 harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only
19 marginally relevant.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Also, while the
20 Confrontation Clause guarantees an opportunity for effective cross-examination, it does not
21 guarantee an opportunity for a cross-examination that is effective in whatever way, and to
22 whatever extent, the defense might wish.  *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per
23 curiam).

24 Petitioner's claim is without merit because evidence of Martin's poverty was presented at
25 trial, though not through petitioner's cross-examination.  Though petitioner asserts that it would
26 have benefitted his defense had the prosecutor not asked that question, the authorities above hold
27 that does not have a right to a cross-examination in whatever way he thinks proper.  Petitioner's
28 claim is denied.

16

**8.    TRIAL COURT'S DUAL USE OF A SINGLE FACT IN SENTENCING**

Petitioner claims that the trial court violated his constitutional rights when it used the same fact as the basis for selecting the upper term and as the basis to enhance his sentence (Pet. at 90–91). The state appellate court denied petitioner's claim, finding that there were "aggravating factors that did not involve a prohibited dual use of facts that support the [trial] court's imposition of the aggravated term" (Ans., Exh. H at 20).

Petitioner's claim fails. Petitioner has not cited any persuasive federal authority that the dual use of a single fact — if such a use occurred in this case — in a sentencing determination violates his federal constitutional rights. A reviewing federal court sits only to address violations of federal, and not state, law. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Because petitioner has not presented a federal allegation, his claim is denied.

**9.    TRIAL COURT'S DENIAL OF PETITIONER'S MOTION TO STRIKE A CONVICTION**

Petitioner claims that the trial court violated his rights when it refused to grant his motion to strike his prior felony conviction (Pet. at 92).[7]

A California sentencing court may strike a prior felony conviction allegation "in furtherance of justice," an "amorphous concept" requiring the trial court to consider both "the rights of the defendant and the interests of society as represented by the People." *See People v. Superior Court (Romero)*, 13 Cal. 4th 497, 507, 530 (Cal. 1996). While petitioner may have the right to bring such a motion under California law, petitioner has not shown that he has a federal constitutional right to bring such a motion. Accordingly, petitioner's claim is denied.

As to all petitioner's claims, the Court concludes that the state court's determinations were not contrary to, or unreasonable applications of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. 2254 (d)(1), (2). Accordingly, petitioner's claims are denied.

---

[7] Petitioner includes a footnote in which he alleges that trial counsel rendered ineffective assistance for failing to object to the imposition of the upper term (Pet. at 87 n.1). Petitioner's claim insufficiently detailed for this Court to determine its merits. Without specifics as to what about trial counsel's conduct allegedly resulted in a deficient performance how this deficiency  resulted in prejudice to petitioner, the Court cannot address this claim, which, accordingly, must be denied.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: December  9 , 2008



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\DEWEESE632.DSM.md